UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OLIVIA WILLIAMS,**

      **Plaintiff,**

v.                                                                   Case No: 6:11-cv-1355-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Olivia Williams (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for social security disability benefits (hereafter "Application"), which alleged a disability onset date of April 14, 2005. Doc. No. 1. For the reasons set forth below, the Commissioner's decision is **REVERSED and REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

**I.  MEDICAL AND OPINION EVIDENCE**

    **A. Charles L. Batson, M.D.**

Charles L. Batson, M.D., is Claimant's treating physician. In 2006, Dr. Batson saw Claimant four times. R. 329-33. His records indicate that he saw Claimant for medication refills, to review laboratory results, and for tooth and gum pain. R. 330, 332-33. Dr. Batson noted fatigue, hypertension, gums and dental health. R. 330, 332-33. On March 5, 2008, Dr. Batson saw Claimant for complaints of headache and hypertension. R. 392. Dr. Batson indicated that Claimant had fatigue and hypertension. R. 392. On April 28, 2008, Dr. Batson

saw Claimant for medication refills and noted fatigue, hypertension, soft tissue in the spine and circled "sensory" in regards to his neurological examination. R. 413. On September 16, 2008, Dr. Batson saw Claimant for an eye problem and noted perral in the eyes, soft tissue in the spine and again circled "sensory" in regards to his neurological examination. R. 412. On September 20, 2008, Dr. Batson signed an application for a disabled parking permit indicating Claimant suffers from a long term disability as a result of an arthritic, neurological or orthopedic condition. R. 410.

In 2009, Dr. Batson saw Claimant for ongoing medical and foot problems. R. 444, 447. Dr. Batson assessed hypertension, diabetes, peripheral neuropathy, obesity, soft tissue difficulty and feet neuropathy with plantar fascia difficulty. R. 445, 449. Dr. Batson conducted a physical examination that revealed mostly normal findings. R. 445, 448-49.

**B. Duane McRorie, D.P.M., and David B. Jager, M.D.**

Duane McRorie, D.P.M., saw Claimant in August, November and December 2006, for diabetic peripheral neuropathy. R. 371-72, 395. Dr. McRorie's August and November notes reflect Claimant's difficulty with several medications. R. 372, 395. Dr. McRorie's December 2006, note indicated that Claimant's use of Lidoderm patches and Neurontin significantly helped her pain, with Claimant rating her pain a three on a ten point scale. R. 371.

On November 17, 2006, Claimant began treating with David B. Jager, M.D., for bilateral foot pain. R. 424. Dr. Jager indicated that Claimant was positive for headaches, back pain, high blood pressure, diabetes and hot flashes. R. 425. Dr. Jager conducted a physical examination which revealed good strength, grip strength and range of motion in Claimant's upper extremities. R. 426. Dr. Jager indicated that Claimant showed no sensory deficits to gross light touch in her upper extremities. R. 426. Dr. Jager found that Claimant could flex and extend her hips and

knees, and could flex and rotate her lumbar spine without problem. R. 426. Dr. Jager noted that Claimant moved from sitting to standing without difficulty, but experienced difficulty walking barefoot secondary to pain. R. 426. Dr. Jager prescribed Cymbalta and a neuropathy gel. R. 426.

On December 14, 2006, Dr. Jager indicated that Claimant stopped taking Cymbalta because it made her feel jittery and stopped using the neuropathy gel because it caused a rash. R. 422. Dr. Jager referred Claimant to a neurologist to determine whether her pain is caused by her diabetes or another source. R. 422.

### C. Sam Ranganathan, M.D.

On November 6, 2006, Sam Ranganathan, M.D., conducted a consultative examination on behalf of the Commissioner. R. 367-68. Dr. Ranganathan noted that Claimant was diagnosed with diabetes in 1997 and her blood sugar was under control after Dr. Batson recently adjusted her medication. R. 367. Dr. Ranganathan noted that Claimant reported the pain in her feet was not responding to medication, she sometimes notices her low back pain and has had high blood pressure for a long time. R. 367.

Dr. Ranganathan conducted a physical examination which revealed that Claimant stands 5'6" and weighs 206 pounds. R. 367. Dr. Ranganathan found Claimant's handgrip and upper extremity strength to be 5/5. R. 368. Dr. Ranganathan noted that Claimant "would not make a good effort for motor system strength of the legs and particularly the foot due to pain. She says everything hurts." R. 368. Dr. Ranganathan indicated that Claimant's position sense was intact and her reflexes were very sensitive. R. 368. Dr. Ranganathan indicated that Claimant can walk without assistive devices, but her tandem walk was unsteady and she could only heel to toe walk a few feet. R. 368. Dr. Ranganathan noted that Claimant's feet were sensitive to touch, but she

was able to take off her shoes, get on and off the examination table and could sit on the examination table and waiting room.  R. 368.  Dr. Ranganathan opined that Claimant has diabetes with neuropathy and a history of hypertension.  R. 368.

### D.  Gloria Hankins, M.D., and Kimberly Johnson

On November 13, 2006, and April 6, 2007, Kimberly Johnson and Gloria Hankins, M.D., completed physical RFC assessments after reviewing Claimant's medical records.  R. 359-66, 382-89.[1]  Dr. Hankins and Ms. Johnson diagnosed Claimant with diabetes mellitus II with neuropathy and hypertension.  R. 359. 382.  Dr. Hankins and Ms. Johnson opined that Claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently.  R. 360, 383.  Dr. Hankins and Ms. Johnson opined that Claimant can sit, stand and/or walk six hours in an eight-hour workday.  R. 360, 383.  Dr. Hankins and Ms. Johnson opined that Claimant's ability to push and/or pull is unlimited within the lifting restrictions noted above.  R. 360, 383.  Dr. Hankins and Ms. Johnson opined that Claimant has no postural, manipulative, visual, communicative or environmental limitations.  R. 361-363, 384-86.

### E.  Todd. C. Hartley, M.D.

On July 26, 2007, Todd C. Hartley, M.D., evaluated Claimant for complaints of foot pain.  R. 414.  Dr. Hartley noted that Claimant has burning pain in her feet and her medication provides mild relief, some drowsiness and mild edema.  R. 414.  Dr. Hartley conducted a neurological examination that revealed good attention span and concentration, normal cranial nerves, 5/5 muscle strength, normal muscle tone and normal muscle bulk.  R. 415.  Dr. Hartley observed that Claimant exhibited "[s]tocking distribution hypesthesia to pinprick."  R. 415.  Dr. Hartley also observed that Claimant's deep tendon reflexes were absent.  R. 415.  Dr. Hartley indicated that Claimant's "fine finger movement, forearm rolling, rapid alternating movements, finger to nose

---

[1]  Kimberly Johnson is not a doctor, but a single decision maker.  Doc. No. 25 at 10.

and heel to shin were performed normally." R. 415. Dr. Hartley indicated that his nerve conduction testing revealed an "absence of sensory responses throughout. Motor responses have normal amplitude and mild slowing of conduction velocity. There was no response in the peroneal nerve above the fibular head. This is consistent with compression neuropathy at the fibular head." R. 415-16. Dr. Hartley indicated the results could also be attributed to Claimant having "great difficulty" tolerating the procedure and his reluctance to increase the "stimulation intensity excessively." R. 416. Dr. Hartley opined that Claimant has polyneuropathy with some demyelinating features and chronic severe foot pain that is secondary to neuropathy. R. 416.

**F. Christopher C. Mason, D.P.M.**

On May 29, 2009, Claimant saw Christopher C. Mason, D.P.M., after suffering injury from a slip and fall accident at a restaurant. R. 454. Dr. Mason indicated that Claimant may have a possible occult fracture in her left foot and ankle. R. 454. Dr. Mason conducted a physical examination that revealed epicritic sensation and deep tendon reflexes were grossly intact, full range of motion in the feet, substantial pain in the left ankle with joint effusion, no evidence of gouty arthropathy and no redness or temperature changes. R. 454. On June 11, 2009, Dr. Mason indicated that Claimant has a fracture talus and exhibited "disproportionate pain" in her left ankle. R. 458. On July 9, 2009, Dr. Mason noted that Claimant was doing better and his examination revealed excellent range of motion, significant swelling and nocturnal discomfort. R. 457. On July 30, 2009, Dr. Mason indicated that Claimant was doing better, had excellent range of motion and had a slight degree of swelling but was experiencing minimal pain and discomfort. R. 456. On September 17, 2009, Dr. Mason noted that Claimant had significant swelling around the talus area, reported pain and discomfort, and had excellent range of motion. R. 470. On October 29, 2009, Dr. Mason reported that Claimant was still having pain and

discomfort, but was vascularly intact and exhibited joint effusion. R. 469.

### G. Gerald Farmer, M.D.

On September 9, 2009, Gerald Farmer, M.D., indicated that Claimant had hypertension, diabetic neuropathy, gout and complained of pain in her feet. R. 459. Dr. Farmer's physical examination indicated that Claimant had a trace of edema in her ankles, but normal flexion and extension in her legs. R. 459. Dr. Farmer assessed diabetes with neuropathy, hypertension, back pain, bilateral foot pain, gout and foot edema. R. 450.

## II. ADMINISTRATIVE PROCEEDINGS

On September 15, 2006, Claimant filed her Application. R. 194-96. The Application was denied initially and on reconsideration. R. 118-19, 125-26. Claimant subsequently requested a hearing before an Administrative Law Judge (hereafter "ALJ"). R. 128. The first hearing was held on January 5, 2009. R. 39-72. At this hearing, Claimant testified that she lived with her husband and mother. R. 42-43. Claimant testified that she last worked as a custodian and previously worked as a cook at a nursing home and van driver for a private transportation company. R. 46, 61. Claimant indicated that she stopped working due to severe pain in her feet and her diabetes mellitus causes sharp pain, swelling and cramps in her legs. R. 48. Claimant stated that she also has pain in her hands which causes her to drop things. R. 48. Claimant indicated that she has plantar fasciitis in both feet that makes her feel like she has two knots in her feet. R. 54. Claimant also testified that she has blood in the back of her eyes and her medication makes her left eye flutter. R. 55, 57.

Although her medications make her drowsy, Claimant testified that she cannot feel pain because the medications make her feel high. R. 49-50. Claimant also indicated that she cannot sleep. R. 50. Claimant stated that she can sit maybe two hours, stand for five minutes and walk

a half of a block before feeling pain or stiffness. R. 51-52. Claimant indicated that she watches television, sometimes grocery shops, drives when she does not take her medications and does not perform any household chores. R. 52-53. Claimant testified that she attends church and sometimes uses the computer. R. 54-55.

On March 27, 2009, the ALJ issued his decision, finding Claimant not disabled. R. 102-09. On July 30, 2009, the Appeals Council remanded the case to the ALJ. R. 112-14. In its order, the Appeals Council noted that the ALJ found Claimant could perform unskilled, sedentary work, but did not perform a function by function analysis of Claimant's ability to do work-related physical activities. R. 113. The Appeals Council further noted that the ALJ's decision only cited evidence through December 2006, and failed to consider Dr. Hartley's "detailed notes and [nerve conduction] testing." R. 113. The Appeals Council noted: "On July 26, 2007, Dr. Hartley found stocking distribution hypesthesia to pinprick, noted absence of deep tendon reflexes throughout, and observed an antalgic gait. Nerve conduction studies revealed the absence of sensory responses throughout." R. 113. The Appeals Council directed the ALJ to obtain additional evidence concerning Claimant's obesity and diabetic neuropathy. R. 113.[2] The Appeals Council also directed the ALJ to evaluate Claimant's obesity, give further consideration to Claimant's maximum residual functional capacity (hereafter "RFC"), provide a rationale for any limitations and evaluate and explain the weight given to Dr. Batson's opinion. R. 113.

On September 14, 2009, the ALJ conducted a second hearing where Claimant and a vocational expert testified. R. 75-93. Claimant indicated that she had completed the eleventh grade and reiterated her work history from the January 2009 hearing. R. 77-79. Claimant testified that she cannot work because she has neuropathy damage in her legs, severe pain, a lot

---

[2] The Appeals Council indicated that, if warranted, the ALJ could obtain a "consultative internal medicine examination and medical source statements about what the claimant can still do despite the impairments." R. 113.

of swelling and can only stand five minutes before her ankles swell and her feet start hurting.  R. 80.  Claimant stated that she is always in pain, whether standing or sitting.  R. 80.  Claimant indicated that she takes two medications for her pain, uses foot patches prescribed by her doctor and rubs an ointment on her feet.  R. 81, 83.  Claimant further indicated that nothing has helped alleviate the pain in her feet and ankles.  R. 83.  Claimant stated that she uses an insulin pump and two medications for her diabetes.  R. 81-82.  Claimant testified that she recently cracked her left ankle after a slip and fall, and she uses a cast when her leg starts bothering her.  R. 82.  Claimant indicated that she has hypertension and walking or moving aggravates her diabetes and hypertension.  R. 83-84.  Claimant also testified to having occasional headaches and gout in her toes.  R. 84.  Claimant also stated that she has pain in her hands that causes her to drop objects.  R. 86.

   Claimant stated that her activities include sitting, sometimes attending church and only occasional driving, because her medications make her drowsy.  R. 85-86, 89.  Claimant stated that she does not sleep well because of her pain, has problems lifting her legs when dressing and does not perform any household chores.  R. 85-86.  Claimant testified that she only wears house shoes because of the swelling in her feet and experiences constant sharp and throbbing pain in her feet, rating the pain a nine on a ten point scale.  R. 87-88.

   The vocational expert classified Claimant's past jobs as janitor, cook helper and driver.  R. 90.  The vocational expert testified that these jobs required medium exertion level and were either unskilled or semi-skilled.  R. 90.  The ALJ posed two hypothetical questions to the vocational expert.  In the first hypothetical, the ALJ asked the vocational expert whether a person of Claimant's age, education and work experience who can perform light work but must avoid even moderate exposure to moving machinery and unprotected heights could perform Claimant's

past work. R. 90-91. The vocational expert indicated that such a person could not perform Claimant's past work, but could work as a small products assembler II or maid. R. 91. In the second hypothetical, the ALJ asked whether a person of Claimant's age, education and work experience who cannot sustain work activity for a full eight-hour workday on a regular, consistent basis due to medical conditions and pain could perform any jobs in the regional or national economy. R. 92. The vocational expert testified that such a person could not perform any jobs. R. 92.

On November 24, 2009, the ALJ issued his decision. R. 19-31. The ALJ found that Claimant last met the Social Security insured status requirements on September 30, 2009, and has not engaged in substantial gainful activity since April 14, 2005. R. 21. The ALJ found that Claimant suffers from the severe impairments of diabetes mellitus with peripheral neuropathy, obesity, malignant hypertension, headaches and gout. R. 21. The ALJ found that Claimant's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22-23.

The ALJ determined that Claimant has the RFC to perform light work, but must avoid even moderate exposure to hazards such as moving machinery and unprotected heights. R. 23. The ALJ outlined Claimant's testimony concerning the pain she experiences, the limitations caused by the pain, the drowsiness caused by her medications and her inability to sleep. R. 24-25. The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 24. To support this credibility

determination, the ALJ relied on findings made by Drs. Ranganathan, Jager, Batson, Mason and Farmer.

Specifically, the ALJ noted that Dr. Ranganathan found Claimant could walk without an assistive device, could sit in the examination and waiting rooms, could get on and off the examination table, could take off her shoes without assistance, could perform the heel-to-toe exam, could perform the straight leg test without difficulty, had normal strength in her upper extremities, and her gross and fine manipulation was within normal limits.  R. 25.  The ALJ pointed out that Dr. Jager indicated Claimant had no difficulty moving from sitting to standing, had no weakness in her extremities, had good grip strength, range of motion and strength in her upper extremities, and reported her medications provided some improvement.  R. 25.  The ALJ indicated that Dr. McRorie reported, in December 2006, that Claimant stated her medications were providing significant relief, rating her pain as a three on a ten point scale.  R. 25.  The ALJ noted that Dr. Batson indicated that Claimant has no loss of motor or sensory functions, has no major ulcerations, lesions or rashes, has no apparent skin thickening, and Claimant's neuropathic symptoms are mild.  R. 25.

The ALJ further pointed out that after her slip and fall injury, the MRIs of Claimant's ankles "are relatively normal" and Dr. Farmer only noted trace edema with normal extension and flexion in her legs.  R. 26.  The ALJ also noted that Dr. Mason's treatment notes reflected that Claimant was consistently doing better and expressed minimal pain and discomfort, which suggested that Claimant's feet felt much better with medication.  R. 26.  Thus, the ALJ found Claimant's reports of debilitating pain not credible because they were inconsistent with Drs. Ranganathan, Jager, Batson, Mason and Farmer's findings in their treatment notes.  R. 25-26.

With regard to Claimant's obesity, the ALJ noted that she did not testify to any limitations caused by her obesity and the medical record reflected that Claimant could ambulate without assistance, her fine and gross dexterity was intact, and her cardiovascular examinations were normal. R. 27. Nonetheless, the ALJ gave Claimant the "benefit of the doubt by including any limitations imposed by [her] obesity" in his RFC finding. R. 27. The ALJ found Claimant's testimony that her medications impair her ability to concentrate due to drowsiness and nausea credible, but found the "extent of the limitation does not impede her ability to sustain sufficient concentration, persistence or pace to do even simple, routine tasks on a regular and continuing basis." R. 27.

In weighing the medical opinions, the ALJ found that Dr. Hankins and Ms. Johnson's opinions "more reasonable" because they "provided specific reasons for their opinions about the [RFC] showing that the opinions were grounded in the evidence . . . including careful consideration of the claimant's allegations about her symptoms and limitations." R. 27-28. The ALJ also noted that their opinions "are consistent with the above noted medical evaluations, including the newly submitted evidence regarding the evaluations in 2009." R. 28. The ALJ did not give "special weight" to Dr. Batson's disability opinion, as expressed in an application for a disabled parking permit, because determining disability is an issue reserved for the Commissioner and Dr. Batson's opinion was conclusory. R. 28. The ALJ supported this finding by pointing out that Dr. Batson's 2006 treatment notes addressed laboratory work, or tooth and gum pain, and his 2008 treatment notes are scarce and, although reflecting Claimant's chief complaints and medication refills, reflect "little more that the words 'sensory,' 'soft-tissue,' and 'HPT' circled' written words 'plantar fascia pain;' and diagnoses of peripheral neuropathy, and hypertension." R. 28. The ALJ also indicated that Dr. Batson's "limitations . . . are inconsistent

with the . . . findings of Dr. Ranganathan, Dr. Jager, and Dr. Mason as well as the overall objective medical evidence." R. 28.

Relying on the vocational expert's testimony, the ALJ found that Claimant cannot perform her past relevant work as a janitor, cook helper and van driver. R. 29. In light of his RFC finding and the vocational expert's testimony, the ALJ concluded that Claimant can work as a small products assembler II and maid. R. 30. Accordingly, the ALJ found Claimant is not disabled. R. 30.

## III. LEGAL STANDARDS

### A. ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

When the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(sentence four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect

law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was

appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[3]

## IV. ANALYSIS

Claimant raises three issues on appeal. First, Claimant argues that the ALJ failed to consider all of the evidence in making his RFC determination. Doc. No. 23 at 9-13. Second, Claimant argues that the hypothetical posed to the vocational expert did not include all of her limitations. Doc. No. 23 at 14-16. Third, Claimant argues that the ALJ did not "make accurate and specific findings" to support his credibility finding. Doc. No. 23 at 17.[4] Claimant requests the Court reverse the ALJ's decision and award her benefits, or, alternatively, remand the decision for further proceedings. Doc. No. 23 at 17.

Claimant raises a four-pronged argument attacking the ALJ's RFC determination. First, Claimant argues that the "ALJ fails to mention anywhere in the decision a very important piece of objective evidence – the nerve conduction test perform by Dr. Todd Hartley on July 26, 2007, nor does he mention the examination performed by Dr. Hartley." Doc. No. 23 at 11. Second, Claimant argues that the ALJ failed to discuss Dr. Ranganathan's findings that Claimant "'was very sensitive' and . . . exhibited pain in her feet when performing the motor system strength test." Doc. No. 23 at 12. Third, Claimant contends it was error for the ALJ to rely on Ms. Johnson's opinion because she is not a doctor. Doc. No. 23 at 13. Fourth, Claimant argues that the ALJ erred in relying on Dr. Hankins' opinion because it was rendered before Dr. Hartley conducted his examination and nerve conduction test. Doc. No. 23 at 13.

---

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

[4] The Court finds that the first issue raised by Claimant is dispositive and mandates reversal. Accordingly, the Court will not address Claimant's other arguments.

The Court broadly construes Claimant's first argument as challenging the ALJ's failure to comply with the instructions of the Appeals Council. In its order of remand, the Appeals Council expressly noted the ALJ's failure to consider Dr. Hartley's medical records, which revealed stocking distribution hypesthesia to pinprick, an absence of deep tendon reflexes, an antalgic gait and an absence of sensory responses as revealed by the nerve conduction studies, in determining Claimant's RFC. R. 113. The Appeals Council directed the ALJ to "give further consideration to the claimant's maximum residual functional capacity during the entire period at issue. Provide rationale with specific references to evidence of record in support of assessed limitations." R. 113 (internal citations omitted). Thus, the Appeals Council directed the ALJ to consider Dr. Hartley's notes and results of the nerve conduction testing, and explicitly state how they impact Claimant's RFC.

The ALJ did not comply with the Appeals Council's instructions because at step five the ALJ never mentioned or otherwise indicated that he considered Dr. Hartley's medical records in determining Claimant's RFC. *See* R. 23-28. An ALJ is required to take the action ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order. 20 C.F.R. § 416.1477(b). An ALJ's failure to comply with the Appeals Council's instructions on remand is reversible error. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 (N.D. Ga. 2006) (remanding where ALJ failed to consider sit/stand option as ordered by Appeals Council); *Bolen v. Astrue*, No. CA 07-0516-C, 2008 WL 694712 at *4 (S.D. Ala. Mar. 12, 2008) (remanding where ALJ failed to specifically note limitations resulting from claimant's chronic obstructive pulmonary disease as ordered by the Appeals Council); *but see Young v. Astrue*, No. 8:09-cv-1056-T-17TBM, 2010 WL 3835859 at *10 (M.D. Fla. July 30, 2010) (finding that ALJ's failure to evaluate claimant's husband's testimony as directed by the

Appeals Council was harmless error). Furthermore, even if the Appeals Council had not directed the ALJ to consider and weigh the findings and opinions reflected in Dr. Hartley's medical records, the failure to state with particularity the weight given to such evidence and the reasons therefor constitutes reversible error. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The Court notes that, in addressing step four, the ALJ cited to Dr. Hartley's medical records as evidence that Claimant shows "only mild neuropathic signs" and her deep tendon reflexes are grossly intact. R. 22 (citing exhibit 13F). However, in interpreting the results of his nerve conduction testing, Dr. Hartley indicated that Claimant had "peripheral neuropathy, involving both sensory and motor nerves, primarily demyelinating type, which is of **moderate severity**." R. 419 (emphasis added). Thus, the ALJ mischaracterized Dr. Hartley's findings. The ALJ's mischaracterization of Dr. Hartley's findings and failure to consider Dr. Hartley's medical records in determining Claimant's RFC leaves the Court unable to determine whether the ALJ's decision is supported by substantial evidence.[5]

## V. <u>REMEDIES</u>

Claimant requests a reversal for an award of benefits or, alternatively, remand for further proceedings. Doc. No. 23 at 17. The Court is mindful that it "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Without engaging in prohibited reweighing, the Court cannot determine whether the cumulative effect of the evidence establishes disability beyond a doubt. *Id.*; *see also Davis*, 985 F.2d at 534. Therefore, the Court finds that the

---

[5] In light of this conclusion, the Court does not address Claimant's other arguments directed to the ALJ's RFC determination.

appropriate remedy is to remand the case to the Commissioner for further proceedings consistent with this decision.

## VI.  CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED and REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on February 6, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate
PO Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
D. Logan Pool, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Joseph A. Rose
Administrative Law Judge
c/o Office of Disability Adjudication and Review

Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224